(No. 47859.—

*In re* APPLICATION OF THE COUNTY COLLECTOR.— (Elmwood Properties, Inc., Appellant, v. Rose Lee Bulls *et al.*, Appellees.)

*Opinion filed March 18, 1976.—Rehearing denied May 27, 1976.*

Allan L. Blair, of Chicago, for appellant.

John P. Brundage, of Glenview, for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Interstate Bond Company purchased at a 1971 tax sale real estate consisting of two lots located at 630 South 12th Avenue in Maywood upon which had been erected a two-story frame house referred to as a "two-flat." Although there were unpaid taxes for 1951, 1957, 1958, 1966, 1967 and 1968, the sale in question here was because of nonpayment of the 1969 taxes. While Interstate's subsequently filed petition for a tax deed was pending, it assigned its certificate of purchase to Elmwood Properties, Inc. (Elmwood), and the Cook County circuit court ordered a tax deed to issue to Elmwood. The Appellate Court for the First Judicial District reversed (30 Ill. App. 3d 757), and we allowed Elmwood's petition for leave to appeal.

While several issues were raised in the trial court, only one was considered by the appellate court. It held that failure of the tax purchaser to serve notice of the sale and date of expiration of the redemption period upon Clarence Roberts, whom the appellate court considered to be an "occupant" of the property, precluded issuance of a tax deed. The correctness of that holding is the only issue discussed in the petition for leave to appeal and the answer thereto. No additional briefs were filed by either party, and while respondents alluded to the other issues in oral

argument, we limit our consideration to the single question of whether Clarence Roberts was an "occupant" of the property as that term is used in the relevant statute.

Rosa Lee Bulls and William M. Payne were the children of Sara M. Payne, who owned the property in question at her death in 1949. She left no will, and Rosa and William apparently each inherited a one-half interest. William lived in Cincinnati, while Mrs. Bulls had resided in the property until her death last year. Clarence Roberts, who is apparently a distant cousin of Mrs. Bulls, and his wife came to live with Mrs. Bulls in 1961 pursuant to an arrangement whereby he paid her $12 per week rent for one room, but, according to Clarence, "had the use of the whole house." Clarence later became guardian of or adopted a deceased sister's two children, and two children were born to him and his wife. A room was added on the house, the cost of which was divided between Mrs. Bulls and Clarence, and the rent agreement was changed so that in lieu of rent Clarence shared the household expenses. There existed no written agreement between them, and the details of the oral understanding appear to have been quite imprecise.

For some reason not disclosed by the record Mrs. Bulls customarily referred to Clarence as her son, and he referred to her as "Momma," as did at least two of the children. It is clear that the three adults and four children lived together as one family in the first-floor apartment, the upper apartment being rented to others.

The pertinent provisions of the Revenue Act of 1939 regarding notice in these tax deed proceedings were contained in sections 263 and 266 (Ill. Rev. Stat. 1971, ch. 120, pars. 744 and 747) and in relevant part provided:

> "A purchaser or assignee shall not be entitled to a tax deed to the premises sold unless not less than 3 months nor more than 5 months prior to the expiration of the period of redemption he shall give notice of the sale and the date of expiration of the period of redemption to the owners, *occupants* and parties interested in the premises.

\* \* \*

Such notice shall be served by the purchaser or assignee upon all other owners and parties interested in the real estate sold, if upon diligent inquiry they can be found in the county, and *upon the occupants of the real estate* in the following manner: as to individuals, by (1) leaving a copy of the notice with such person personally or (2) by leaving a copy at his usual place of abode with some person of the family, of the age of 10 years and upwards, and informing that person of the contents thereof, provided the purchaser or assignee shall also send a copy of the notice by registered or certified mail, return receipt requested, to such party at his usual place of abode; \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1971, ch. 120, par. 744.)

In section 266 it is stated: "The court shall insist on strict compliance with the provisions of Section 263 of this Act; \*\*\*."

No question is raised as to the adequacy of the service of notice upon Mrs. Bulls. She testified she would have redeemed the property if she could have secured the money. It appears, however, that there were four unreleased mortgages and a Federal revenue lien upon the property in addition to the unpaid taxes. Respondents vigorously urge that Clarence Roberts was an "occupant" and service of notice upon him was necessary. William Rabe, a field agent for Interstate, testified that he personally served the notice upon Mrs. Bulls in the first-floor apartment at 6:55 p.m. on August 8, 1973; that her "son" and his family were in the kitchen; and that when he asked her who they were she told him it was "her son and his family." While Mrs. Bulls and Clarence Roberts denied that any of her "son's" family was home when Rabe called at the house and she could not remember him inquiring about them, the latter portion of her response was rather thoroughly impeached by her answers to similar questions in a pretrial deposition. In our opinion it cannot fairly be said from this record that petitioner's agent had any reason to believe that Clarence Roberts was other than

a son who, with his family, lived with his mother in her home, which she and her brother owned.

We believe our opinion in *First Lien Co. v. Marquette National Bank* (1973), 56 Ill.2d 132, which the appellate court considered inapposite, is dispositive of the question whether the provisions of sections 263 and 266 relating to notice to occupants required service upon Clarence Roberts. The relevant statutory language is substantially unchanged, and we there held that an adult daughter who lived in an apartment with her father and contributed towards the rent was not an occupant in the sense that notice must be served upon her in addition to the father.

The appellate court apparently regarded Clarence Roberts as the head of the family, a factor emphasized in *Gage v. Lyons* (1891), 138 Ill. 590, relied upon by the appellate court as supporting its conclusion. With that characterization we simply do not agree. Rosa Lee Bulls was the only person in the first-floor apartment with any ownership interest in the property—for all practical purposes it was hers since she made no accounting to her brother; she was employed, at least on a part-time basis; she received $150 per month rent from the upstairs apartment; and Clarence Roberts, himself, testified that she "never did discuss anything with me," that he had never had "a general discussion about her expenses" with her, and that she had made him no promises regarding the property. Under these circumstances it is, in our judgment, simply not correct to say that merely because Clarence Roberts and Rosa Lee Bulls had some ill-defined arrangement for sharing expenses, pursuant to which she permitted him and his family to live with her, he was elevated to the status of "head of the family."

In our judgment this case so nearly parallels *First Lien* as to be controlled thereby. The judgment of the appellate court is accordingly reversed, and the cause remanded to that court for consideration of the remaining questions originally presented to it.

*Reversed and remanded.*